**Lewis O. BAILEY, Plaintiff,**

v.

**Anthony J. CELEBREZZE, Secretary of Health, Education, and Welfare, Defendant.**

**Civ. A. No. 720.**

United States District Court
S. D. West Virginia,
at Bluefield.

April 19, 1963.

Edmund D. Wells, Jr., Bluefield, W. Va., for plaintiff.

Harry G. Camper, Jr., U. S. Atty., Charleston, W. Va., for defendant.

HARRY E. WATKINS, District Judge.

Plaintiff seeks judicial review of the final decision of the Secretary of Health, Education, and Welfare that he was not entitled to disability insurance benefits or to a period of disability under sections 223 and 216(i) of the Social Security Act, as amended, based on his application of July 15, 1960. For the reasons hereinafter stated, it is now found that there is substantial evidence to support the Secretary's decision; that plaintiff's motion for summary judgment should be denied, and defendant's motion for summary judgment should be granted.

On July 15, 1960, plaintiff filed an application to establish a period of disability and for disability insurance benefits. This application was denied by the Bureau of Old-Age and Survivors Insurance, both initially and upon reconsideration. On May 3, 1962, a hearing examiner also found that plaintiff was not entitled to a period of disability or to disability insurance benefits. This decision became the final decision of the Secretary when the Appeals Council denied plaintiff's request for review on June 25, 1962.

■ In order to meet the statutory definition of disability plaintiff has to establish that he had been continuously precluded from engaging in any substantial gainful activity by reason of a medically determinable physical or mental impairment or impairments which can be expected to result in death or to be of long-continued and indefinite duration and that he met the special earnings requirements for the purpose of entitlement. In deciding whether the evidence meets this statutory definition of disability, the trier of fact must, of course, take into consideration the education, training and experience of the claimant. On the basis of his application of July 15, 1960, the evidence had to establish that plaintiff was under a disability as defined by the Act beginning on or before October 1, 1960, for entitlement to disability insurance benefits, and on or before October 15, 1960, for the establishment of a period of disability. His special insured status continued until March 31, 1962.

In his application, dated July 15, 1960, plaintiff alleged that he became unable to work in 1957 because of silicosis; that he was born on November 11, 1903; that he completed the seventh grade; and that he was last employed as a coal miner. He had worked in the mines between thirty-five and forty years doing all types of mine work such as operating a motor and operating a hydraulic machine that cut coal, and boring holes with a drill. He stated that he last worked in the mines in 1954 or 1955 and that he was cut off from mine work because he could not get to work due to missing his rides. His work at the mines was not terminated because of physical or mental health reasons. After ceasing to work in the "big mines" in 1955, he took a coal lease and operated a truck mine for about four or five months. He hired a man who had ponies and a light truck to do the work in the leased mine. In 1959 plaintiff went to Norfolk, Virginia, and got a job in a cabinet factory where he did some light work for a period of four or five weeks. This job consisted of rolling glue on the back of a material which was then affixed to a cabinet by a machine. He testified further that he did not have too much physical difficulty in performing this work. He apparently was "cut off" because he could not maintain adequate production and not for reasons of disability.

Dr. Henry F. Warden, Jr., reported on July 16, 1960 that plaintiff complained of shortness of breath on exertion. He noted increased diameter of the chest and that chest X-rays revealed bilateral increase in the lung markings. Plaintiff's heart was normal in size and shape. Dyspnea (shortness of breath) occurred when plaintiff climbed twelve stair steps. His diagnosis was "Non-specific pulmonary fibrosis with early emphysema." Dr. Warden administered no treatment. He also reported an operable, indirect, left inguinal hernia. He concluded that

plaintiff's condition was static and that he could not perform heavy physical work.

In a report dated July 25, 1960, Dr. O. J. Bailes stated that plaintiff had been "having trouble with arthritis for the past 2–3 years. Much worse recently" and that he had strained his back in May, 1960. He also reported increased bronchial marking. This conclusion was reached apparently after X-rays of the chest had been taken although such was not specifically stated. His concluding remarks were: "Silicosis reported by 2 radiologists, but not reported by last examiner. History of prolonged exposure." The latter remark apparently refers to "prolonged exposure" to possible silicosis producing conditions.

Dr. Richard O. Rogers reported on November 18, 1960, that plaintiff complained of shortness of breath upon any exertion and that he could walk up four or five steps if he took his time. He had no trouble walking on level ground. There was no orthopnea and no swelling of the feet. He had a cough which occurred mostly in the morning. He smokes about one package of cigarettes per day. Physical examination showed that plaintiff was five feet seven inches tall, weighed 148 pounds, had a blood pressure of 124/80, and a pulse of 60. He appeared to be healthy and in no acute distress. His eyes, ears, nose, and throat were apparently normal. The heart was negative, and his chest revealed good motion of the chest cage. There were no rales or wheezes. A large reducible, left inguinal hernia was observed. A back examination revealed a mild kyphoscoliosis with flexion to 80 degrees without pain. There was no pain on straight leg raising, and deep reflexes were equal and active. Rhomberg was negative. X-rays showed that no change in the appearance of the chest had occurred in the last four months although there was some increase in the lung markings bilaterally. His heart was normal in size. Slight hypertrophic lipping was noted between the bodies of L2 and L3 which could possibly be due

to an old injury of L3. The general alignment of the spine was good. Pulmonary function studies showed a possible mild airway obstruction. An electrocardiogram was normal. Dr. Rogers' remark was, "In summary, I could find no major physical impairment in this man."

Dr. Bailes in a second report, dated February 24, 1961, stated on the basis of two X-ray reports made at the Bluefield Sanitarium several months before the date of his report that his diagnosis of plaintiff's condition was, "Chronic bronchitis, with probably subclinical silicosis, and hypertrophic osteoarthritis." His impression was that plaintiff "is not employable with these disabilities."

Plaintiff was given an examination at the Bluefield Mental Health Center on April 26, 1961. Dr. David M. Wayne reported that plaintiff's major symptoms concerned his back and mild complaints involving his lungs. "Subjective nervous symptoms of any magnitude are denied. There is mild tremulousness on occasion. Depression is not a major symptom." There was no evidence of paranoid thinking, and delusions were not elicited. His psychiatric diagnosis was "None."

Plaintiff testified that in August, 1961 (ten months after the expiration of the effective date of his application of July 15, 1960), his arm became paralyzed overnight. In October, 1961, plaintiff was examined at the University of Virginia Hospital. In a report dated October 18, 1961, it was reported by Dr. Julian Kitay that two months previous plaintiff had consumed about a pint of gin, went to bed, and awoke to find that he could not move his right arm from the region of the deltoid muscles on down. At the end of two weeks, movement returned to the arm, but the arm was very weak and still remains so. Physical examination revealed a well nourished man in no acute distress. An ophthalmoscopic examination showed some tortuosity. The right shoulder was carried higher than the left, and there was some spasm in the right supraspinatus muscle. Moderate kyphosis was

seen. Occasional expiratory squeeks were heard in both lower lung fields posteriorly. A hernia was noted in the left inguinal canal. A neurological examination revealed a generalized weakness of the muscles of the right arm, flaccid right triceps and biceps, and some limitation of the wrist. The remainder of the examination was within normal limits. Pulmonary function tests were also considered to be within normal limits. Chest X-rays showed fine nodular flocculent densities bilateral consistent with pneumonoconiosis. The right shoulder showed an old fracture of the distal tip of the clavicle with incomplete or possible non-union. The impressions were (1) Erbs palsey of the right brachial plexus, improving (Saturday night Paralysis Syndrome); (2) Silicosis; (3) Indirect left inguinal hernia; (4) Chronic osteoarthritis of the knees, slight; (5) Chronic prostatitis, mild; (6) Incomplete or possible non-union of the right clavicle. A report by Dr. Bailes, dated November 6, 1961, confirmed the diagnosis made by the physicians at the University of Virginia Hospital.

On the basis of the above-discussed evidence, as well as all other evidence of record, both objective and subjective, there is substantial evidence to support the findings and conclusions of the Secretary that plaintiff was not entitled to disability insurance benefits or to a period of disability. There can be no doubt that plaintiff does suffer from an impairment or impairments. The crucial question here is whether these impairments are so severe as to render plaintiff unable to engage in any substantial gainful activity. The time of the onset of these impairments is also of great significance because unless the impairments began on or before the expiration of the effective date of plaintiff's application of July 15, 1960, the evidence relating to them is of no help in determining whether plaintiff is disabled within the meaning of the Act, as amended, except to the extent that these facts may help to clarify or tend to establish an impairment or disability during the application's effective period.

In view of the above discussion, it is apparent that the evidence relating to plaintiff's sudden arm difficulty (August, 1961) could be of no aid to the trier of fact in that it occurred after the effective period of plaintiff's application.[1] It does not even help in determining his physical condition during the effective period in that there is no complaint or evidence of a right shoulder or arm difficulty until after the sudden paralysis in August, 1961.

On the basis of the other evidence of record of all types, it is clear that even though plaintiff suffered from certain medically determinable impairments, they are not so severe as to preclude him from engaging in any substantial gainful activity. Plaintiff alleges that he became unable to work in 1957. However, he testified that he performed light work in 1959 and that he believed that he could do light work up to October, 1960. The Secretary found that the medical evidence established that plaintiff suffered from silicosis, and there is substantial evidence to support this finding. There is also substantial evidence to support his decision that this pulmonary condition was not so severe as to preclude plaintiff from engaging in any substantial gainful activity.

Counsel for the plaintiff admits "that perhaps a case has not been made that will entitle the Court to reverse the Hearing Examiner's decision * * *," but urges that the case be remanded for further hearing. No good cause is shown for such action by the court on the pending application.

Therefore, it is found that there is substantial evidence to support the decision of the Secretary that plaintiff is not entitled to disability insurance bene-

1. The effective period of plaintiff's application was October 15, 1960, as to establishment of a period of disability, and October 1, 1960, for entitlement to disability insurance benefits.

fits or to a period of disability under the applicable sections of the Act, as amended. Plaintiff's motion for summary judgment is denied, and defendant's motion for summary judgment is granted.